UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X
WINTRUST SPECIALTY FINANCE, A DIVISION OF              Case No. 20-CV-16589-SRC-CLW
BEVERLY BANK & TRUST COMPANY, N.A.,

                               Plaintiff,

    - against -

PINNACLE COMMERCIAL CREDIT INC.,

                              Defendant.
-------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

                                                    MORITT HOCK & HAMROFF LLP
                                                    *Attorneys for Plaintiff*
                                                    400 Garden City Plaza, 2nd Fl.
                                                    Garden City, New York 11530
                                                    (516) 873-2000
                                                    Facsimile: (516) 573-2010
                                                    Email: rcohen@moritthock.com
                                                              lbernstein@moritthock.com
                                                              rsherry@moritthock.com

Of Counsel:   Robert S. Cohen
                    Lauren Bernstein
                    Rebekah Sherry

3386267v3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................3

POINT I
DEFENDANT FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT ......................3

    A.    DEFENDANT BREACHED THE INDEMNITY PROVISION OF THE ORIGINATOR AGREEMENT AND FURTHER BREACHED ITS REPRESENTATIONS AND WARRANTIES TO PLAINTIFF THEREUNDER ...............................................................................................3

    B.    EVEN IF THE ORIGINATOR AGREEMENT WAS AMBIGUOUS, CUSTOM AND PRACTICE AS EXPLAINED BY DEFENDANT IS NOT APPLICABLE ...............................................................................................5

        1.    The Timeline Of Events ...............................................................................6

    C.    PLAINTIFF ESTABLISHED IT IS ENTITLED TO DAMAGES .........................9

POINT II
DEFENDANT'S AFFIRMATIVE DEFENSES ARE WITHOUT MERIT AND CANNOT DEFEAT SUMMARY JUDGMENT ........................................................................11

POINT III
DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ...........................................12

    A.    CONTRARY TO DEFENDANT'S ASSERTIONS, THE "POST-MORTEM" EMAIL IS NOT A CONFESSION OF PLAINTIFF'S LIABILITY ...............................................................................................................12

    B.    THERE IS NO INDEMNIFICATION PROVISION IN *JETCRETE* AND DEFENDANT WAS IN THE BEST POSITION TO PREVENT THE LOSS ...............................................................................................................13

POINT IV
CONCLUSION AND PRAYER FOR RELIEF ..........................................................................15

WORD COUNT CERTIFICATION ............................................................................................16

3386267v3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gonzales v. Specialized Loan Servicing*,
   No. 20-cv-0159, 2020 WL 2992175 (E.D. Cal. June 4, 2020) .................................................10

*Jetcrete North America L.P. v. Austin Truck & Equipment Ltd.*,
   484 F. Supp. 3d 915 (D. Nevada 2020) ..................................................................1, 13, 14, 15

*Talaie v. Wells Fargo Bank*,
   No. 12-cv-04959, 2013 WL 3316157 (C.D. Cal. June 27, 2013) ............................................10

3386267v3

## PRELIMINARY STATEMENT

Wintrust Specialty Finance, a division of Beverly Bank & Trust Company, N.A., ("Plaintiff")[1] respectfully submits this Reply Memorandum of Law in further support of Plaintiff's Motion for summary judgment on its First, Second and Third Claims asserted in its Amended Complaint (the "Motion"). In addition, Plaintiff submits this Memorandum of Law in opposition to Defendant's Cross Motion for summary judgment dated August 11, 2023 (the "Opposition").

Defendant leans heavily on *Jetcrete North America L.P. v. Austin Truck & Equipment Ltd.*, 484 F. Supp. 3d 915 (D. Nevada 2020), to convince the Court that Plaintiff should be held liable for the loss in this matter. However, Defendant's reliance on *Jetcrete North America L.P.*, is misguided as it overlooks material distinguishing facts, including, but not limited to, Defendant's active role in this transaction and the indemnification provision set forth in the Originator Agreement. *See* Section III(B), *infra*.

In fact, Defendant's Opposition ignores and completely fails to address and/or refute its agreement to indemnify Plaintiff for its acts. Specifically, the indemnification provision requires that the Defendant indemnify Plaintiff for "any and all expenses, injury and damage, including reasonable attorney's fees, which the Bank [i.e. Plaintiff] may hereafter incur, pay or suffer as a result of **Originator's [i.e. Defendant's] acts** or any breach of Originator's [i.e. Defendant's] obligations, representations and warranties set forth herein." Wood Affidavit, Ex. A at ¶ 9 (emphasis added). Simply put, Defendant provided Plaintiff with wire instructions to pay Oshkosh (the vendor), which wire instructions proved to be incorrect. Defendant's deliberate act of providing Plaintiff with those improper wire instructions after it purportedly confirmed them is

---

[1] All terms not defined herein shall have the same meanings as set forth in the Affidavit of Chelsea Wood, sworn to on April 26, 2023 (the "Wood Affidavit") and the Affirmation of Lauren Bernstein dated April 28, 2023 (the "Bernstein Affirmation") submitted in support of Plaintiff's Motion.

1

3386267v3

clearly an act of Defendant covered by the indemnity provision. Defendant has no response to this argument and no proper response refuting this argument exists.

In addition, Defendant's attempt to contradict the deposition testimony of its own employee, Paula Realmuto is without support. Although Defendant baldly states that Plaintiff sent the funds with the faulty wire instructions before Defendant confirmed the proper wire instructions, such an argument makes no sense. Specifically, Defendant ignores its own employee's testimony and incredibly argues that Ms. Wood failed to wait until Ms. Realmuto confirmed the wire instructions prior to sending the wire. Not only does the documentary evidence fail to support Defendant's version of events, Ms. Realmuto's testimony at her deposition confirms that Ms. Wood did not fund the transaction or send the wire until Ms. Realmuto provided Ms. Wood with the updated, yet fictitious wire instructions. *See* Section I(B)(i), *infra*. Accordingly, Plaintiff could not have sent the fictitious wire early as it only received the fictitious wire in the email from Defendant confirming that they should be used. Ironically, if Defendant's timeline of events was accurate and Ms. Wood failed to wait until Ms. Realmuto confirmed the wire instructions, the wire would have been sent utilizing the valid wire instructions, Oshkosh would have received the First Payment and this lawsuit would never have been commenced.

Moreover, the Defendant does not and cannot point to any email or other communication at any time during or after the funding in which it advised Plaintiff not to send the funds utilizing the fictitious wire instructions. There is no dispute that the fictitious wire instructions sent to Plaintiff were the final wire instructions sent to Plaintiff and were the wire instructions used by Plaintiff. It cannot be overemphasized that at no time did Defendant advise Plaintiff not to use those fictious wire instructions. To the contrary, Defendant confirmed that they were to be used by Plaintiff. Defendant's account of the timeline of facts in this case makes no sense and is absurd.

3386267v3

The Court should disregard Defendant's argument regarding the timeline of key events as a complete red herring.

As set forth in more detail below, Plaintiff's Motion should be granted in its entirety as there are no genuine issues of material fact.

## ARGUMENT

## POINT I

## DEFENDANT FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT

Plaintiff established its entitlement to summary judgment on its First Claim for breach of contract, on its Second Claim for indemnification and on its Third Claim to recover legal fees and costs incurred by reason of Defendant's actions. Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment dated April 28, 2023 (the "Moving Memo") at pp. 5-8. As set forth in more detail below, Defendant has failed to raise a genuine issue of material fact and therefore Plaintiff's Motion should be granted in its entirety.

**A.  DEFENDANT BREACHED THE INDEMNITY PROVISION OF THE ORIGINATOR AGREEMENT AND FURTHER BREACHED ITS REPRESENTATIONS AND WARRANTIES TO PLAINTIFF THEREUNDER**

Defendant argues that Plaintiff has not met its *prima facie* right to summary judgment on its First, Second and Third Claims because "[t]here is no language in the Originat[or] Agreement or the Assignment specifically addressing payment terms." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment (the "Opposition Memo") at p. 8.

First and foremost, despite the fact that Plaintiff contends that both Sections 5(A) (representations and warranties) and 9 (indemnification provision) of the Originator Agreement provide a basis for which the Court should determine Defendant breached its obligations owed thereunder, Defendant focuses its argument solely on Section 5(A) (representations and

3

warranties) and completely fails to address Section 9 (indemnification provision). As set forth in Plaintiff's Motion, Section 9 of the Originator Agreement states as follows:

> Originator [i.e. Defendant] agrees to indemnify and hold the Bank [i.e. Plaintiff] harmless for any and all expenses, injury and damage, including reasonable attorney's fees, which the Bank [i.e. Plaintiff] may **hereafter** incur, pay or suffer as a result of Originator [i.e. Defendant's] **acts** or any breach of Originator's [i.e. Defendant's] obligations, representations and warranties set forth herein…or in connection with any financing transaction (including Originator's [i.e. Defendant's] dealings with any obligor, guarantor and/or vendor)…

Wood Affidavit, Ex. A. at ¶ 9 (emphasis added). Based on the plain language set forth in Section 9, Defendant cannot genuinely argue that the Originator Agreement is unclear and/or does not have language which addresses whether Defendant is liable to Plaintiff for its actions in providing Plaintiff with fictitious wire instructions. Section 9 provides that Defendant agrees to indemnify Plaintiff "for any and all expenses, injury and damage" Plaintiff incurs "as a result of Originator's [i.e. Defendant's] **acts**" and specifically **includes** "Originator's [i.e. **Defendant's**] **dealings with** any obligor, guarantor and/or **vendor**." *Id.*, Ex. A. at ¶ 9 (emphasis added).

Moreover, Section 5(A) of the Originator Agreement provides that Defendant expressly warranted and represented that the documents submitted to Plaintiff "will be valid, authentic, and binding." *Id.*, Ex. A at ¶ 5(A). Although the provisions do not specifically state "wire instructions" or "payment terms" (as Defendant argues), it is unreasonable for a contract to specify each and every document which must be "valid, authentic, and binding" or to itemize every "act" that would create an indemnification obligation. Both the representations and warranties provision and the indemnification provision are drafted broadly to include *all* documents submitted from Defendant to Plaintiff and *all* acts of Defendant which cause Plaintiff damages. *All* acts would clearly include Defendant's verification of the wire instructions and providing same to Plaintiff. The Originator Agreement is clear.

4

Defendant also asserts that its obligations under Sections 5(A) and 9 "ended when Plaintiff entered into the Assignment" and even if its obligations continued "Plaintiff admits it assumed the duty to pay Oshkosh." Opposition Memo at p. 8, 9. Defendant's arguments are contradicted by the explicit language in the Originator Agreement. With respect to the representations and warranties, the Originator Agreement states "[t]hese representations, warranties, covenants, and terms, **are continuing and shall survive termination of this Agreement**…" Wood Affidavit, Ex. A. at ¶ 5 (emphasis added). With respect to the indemnification provision, the use of the word "hereafter" illustrates that the provision will apply to future losses based on Defendant's future actions. *Id*., Ex. A. at ¶ 9. Therefore, Defendant's obligations as set forth under Sections 5 and 9 are ongoing and survive after the Assignment.

Lastly, and contrary to the Opposition, Plaintiff was not "obligated" and did not "affirmatively t[ake] on [the] role" of paying Oshkosh. *See* Opposition Memo at p. 10. Rather, as part of the consideration to be paid to *Defendant*, and as is common in the industry, Defendant requested that Plaintiff forward the Purchase Price to Oshkosh to pay for the Truck. Wood Affidavit at ¶¶ 18, 20(d). Plaintiff agreed and thereafter Defendant appropriately took it upon itself to provide and verify the correct wire instructions to complete the transaction. *Id*. at ¶¶ 18, 20.

There is no logical way for the Originator Agreement to be read as ambiguous and therefore Defendant does not create a genuine issue of material fact precluding the Court from granting Plaintiff summary judgment.

**B.     EVEN IF THE ORIGINATOR AGREEMENT WAS AMBIGUOUS, CUSTOM AND PRACTICE AS EXPLAINED BY DEFENDANT IS NOT APPLICABLE**

As set forth in Section I(A), *supra*, the Originator Agreement clearly sets forth the obligations that Defendant owes to Plaintiff. However, assuming *arguendo*, that the language in the Originator Agreement is ambiguous, custom and practice as explained by Defendant is not

applicable to ascertain the parties' obligations in this case. Defendant argues that "the funding entity is responsible for wire instruction verification" relying solely upon the Certification of Edward DeCandido sworn to in August 2023 (the "DeCandido Certification"). Mr. DeCandido alleges that Plaintiff did not "request verification of any wire instructions" in prior transactions between Plaintiff and Defendant. DeCandido Certification at ¶ 4. Mr. DeCandido is correct. Plaintiff did not specifically request that Defendant verify wire instructions in this case or in prior transactions that were originated from Defendant to Plaintiff. The first reason is because the language in the Originator Agreement provided that Defendant was required to do so, and Plaintiff was relying upon the agreed upon terms of the Originator Agreement. The second reason — specific to the transaction at issue in this case — is that <u>Defendant took the active role in communicating with Devault (the customer) and Oshkosh and specifically asked Plaintiff to hold off on sending the wire until it confirmed the proper wire instructions</u>. Wood Affidavit at ¶ 20. Wood Affidavit, Ex. D at D0291-D0292. By taking these actions, Defendant confirmed to Plaintiff that it was verifying the wire instructions, which obligation is consistent with the requirements of the Originator Agreement.

1. <u>The Timeline Of Events</u>

As set forth in Plaintiff's Motion, the key timeline of events is as follows:

| Timeline | Supporting Testimony |
|---|---|
| On or about July 14, 2020, Defendant provided Plaintiff with a funding package which included the accurate wire instructions; [Confirmed by Paula Realmuto at Bernstein Affirmation, Ex. J (Realmuto Deposition) at 21:18-22:8] | **Q**: At the time of the assignment for this specific transaction, were these documents sent to Wintrust?<br>**A**: Yes.<br>Realmuto Deposition at 21:18-21.<br><br>**Q**: In that funding package, do you recall if they were sent wire instructions?<br>**A**: Yes.<br>Realmuto Deposition at 21:22-25. |

6

3386267v3

| Timeline | Supporting Testimony |
|---|---|
|  | **Q**: When did you send the funding package to Wintrust?<br>**A**: July 14th of 2020.<br>Realmuto Deposition at 22:6-8.<br><br>The wire instructions referenced in this line of questioning are the July 9 Wire Instructions (i.e. the original accurate wire instructions) annexed to the Bernstein Affirmation, Ex. G at D0035. |
| On July 16, 2020 at 11:17AM EST: Defendant informed Plaintiff that Oshkosh needed to provide updated wire instructions because its bank would not accept payments over $200,000 and asked Plaintiff if Plaintiff already sent the wire to Oshkosh; [Confirmed by Paula Realmuto at Bernstein Affirmation, Ex. J (Realmuto Deposition) at 32:11-21, 42:2-44:21] | **Q**: At some point you were advised that the initial wire instructions that you were provided [] needed to be changed; is that correct?<br>**A**: Yes.<br>Realmuto Deposition at 32:16-21.<br><br>The wire instructions referenced in this line of questioning are the July 9 Wire Instructions i.e. the original accurate wire instructions) annexed to the Bernstein Affirmation, Ex. G at D0035. |
| On July 16, 2020 at 11:19AM EST: Plaintiff informed Defendant that Plaintiff would not initiate the wire until Defendant provided Plaintiff with the new wire instructions; [Confirmed by Paula Realmuto at Bernstein Affirmation, Ex. J (Realmuto Deposition) at 44:10-44:19, 45:25-46:6] | **Q**: After you sent the e-mail indicating or asking if Wintrust had already sent out the wire, what was the response?<br>**A**: Chelsea and everyone at Wintrust -- Chelsea replied back, CC ing everyone at Wintrust, "I'm getting it ready now. I will hold off until you confirm the new wiring instructions with the vendor."<br>Realmuto Deposition at 44:10-19. |
| On July 16, 2020 at 11:37AM EST: Defendant sent the fictitious wire instructions to Plaintiff. [Confirmed by Paula Realmuto at Bernstein Affirmation, Ex. J (Realmuto Deposition) at 44:23-45:15] | **Q**: At some point, did you send new wire instructions?<br>**A**: Yes.<br>**Q**: Was that after Chelsea had advised that she had not sent the wire out yet?<br>**A**: Yes.<br>Realmuto Deposition at 44:23-45:2-5.<br><br>**Q**: Were those the wire instructions that were sent from Rick Ross?<br>**A**: Yes.<br>Realmuto Deposition at 45:13-15. |

7

| Timeline | Supporting Testimony |
|---|---|
|  | The wire instructions referenced in this line of questioning are the 11:33 Wire Instructions (i.e. the fictitious wire instructions) that are annexed to the Bernstein Affirmation, Ex. E at WINTRUST00075. |
| On July 16, 2020 at 11:42AM EST: Pursuant to the fictious wire instructions sent from Defendant to Plaintiff, Plaintiff sent the First Payment to the fictious vendor as directed by Defendant. [Confirmed by Paula Realmuto at 46:12-14, 51:9-52:18][2] | **Q**: When were you advised that Wintrust sent out the wire?<br>**A**: 11:42 A.M. on July 16, 2020.<br>Realmuto Deposition at 46:12-14. |

Wood Affidavit at ¶ 20. As is evident by the timeline above, Defendant took on the obligation to confirm the veracity of the wire instructions. Moreover, Plaintiff was not required to verify those wire instructions, particularly when the Defendant was: (1) directing the payment of its monies to another entity (i.e. the vendor, Oshkosh) selected by Defendant; (2) responsible for gathering the information from Devault and Oshkosh for the transaction; (3) providing Plaintiff with wire instructions; (4) continuing to actively communicate with Oshkosh and Devault throughout the transaction to obtain and verify the wire instructions; (5) advising Plaintiff that there was going to be a change in the wire instructions; (6) reaching out to Oshkosh and Devault to confirm which wire instructions should be utilized to fund the transaction and; lastly (7) providing Plaintiff with the new, yet fictitious, wire instructions.

---

[2]As explained in the Wood Affidavit, the timeline of events set forth herein are reflected in EST. Defendant is either intentionally misleading the Court or does not understand that when two individuals in two different time zones are sending emails to each other the time stamps on those emails are based on a setting in the email program that the recipient is utilizing. It appears that Defendant's email program was set to show time stamps based on the time zone of the recipient. Therefore, the reason the time stamps set forth in Exhibit A to the Realmuto Certification are different than what is shown in Plaintiff's Motion is because all of the time stamps in the chain are not consistently in EST or PST. Each time stamp reflects either EST or PST based upon where the email recipient is located. As set forth in the deposition testimony of Ms. Realmuto, the Plaintiff did not send the funds with the fictitious wire instructions until Defendant provided to Plaintiff the so called proper "new" wire instructions.

8

This is not a case where Defendant was hacked or where Defendant took a "back seat" role in gathering the information necessary to coordinate where and when the wire should be sent. In fact, this hands-on role is confirmed in the DeCandido Certification where he admits that Defendant "kept [Plaintiff] informed of all information known to [Defendant]…including any changes occurring or learned following submission of [the] proposed financing transaction to [Plaintiff]." DeCandido Certification at ¶ 3(B). Moreover, Ms. Realmuto confirmed Defendant's active role in funding this transaction where she states "I sent an email to my contact at Oshkosh seeking verification." Realmuto Certification at ¶ 4. In addition, Defendant admits that it failed to follow its own policies by: (1) accepting changes to the wire instructions by email even though Defendant itself has declared in its email to others that to do so is "dangerous" and (2) failing to confirm the wire instructions with a call to the originator of the email i.e. Devault and/or Oshkosh. *See* DeCandido Certification at ¶¶ 3(B), 4.

C. **PLAINTIFF ESTABLISHED IT IS ENTITLED TO DAMAGES**

In its Opposition, Defendant argues that Plaintiff's breach of contract claim should fail because Plaintiff did not establish that it was entitled to damages based upon the fact that: (1) Devault ultimately took possession of the Truck and Plaintiff ultimately received a first priority security interest in the Truck; and (2) Plaintiff "charged-off" the loan. Defendant's arguments are without merit. Opposition Memo at pp. 11-12; *see also* Defendant's Counterstatement to Statement of Alleged Undisputed Material Facts (the "Counter Statement of Facts") at ¶ 26.

Even though Devault ultimately took possession of the Truck and Plaintiff ultimately received a first priority security interest in the Truck, all of this happened, *despite* Defendant's multiple breaches because Plaintiff, *even though it was not required to do so*, made the Second Payment to Oshkosh for the Purchase Price several months later, in order to attempt to mitigate damages. Wood Affidavit at ¶ 25. The Second Payment allowed Devault to take possession of the

9

Truck and caused Plaintiff to receive a first priority security interest in same. *Id*. However, Plaintiff is still damaged by the amount of the First Payment. *Id*.

  Moreover, Defendant argues that because Plaintiff "charged-off" the loan for tax purposes and in its Moving Memo did not "attempt to quantify the effect of the charge-off", Plaintiff has not established that it is entitled to damages and such an omission is "fatal" to Plaintiff's Motion. Opposition Memo at pp. 11-12. Defendant does not cite to any case law to support the proposition that when a company makes an accounting decision to lower its tax liability, there is an effect on the company's rights and remedies under a contract. Quite the opposite, simply because Plaintiff charged off the damages it sustained based on Defendant's actions does not result in the discharge of Defendant's obligations and/or liabilities under the Originator Agreement. *See Gonzales v. Specialized Loan Servicing*, No. 20-cv-0159, 2020 WL 2992175, at *6 (E.D. Cal. June 4, 2020) (stating "the fact that the Second Loan may have been 'charged off' does not make it unenforceable or no longer legally binding…That is, a loan that is 'charged off' may still be legally collected upon."); *Talaie v. Wells Fargo Bank*, No. 12-cv-04959, 2013 WL 3316157, at *5 (C.D. Cal. June 27, 2013) (stating "Plaintiffs overstate the effect of a charge-off. By reporting a debt as charged off, a creditor merely declares that the debt is unlikely to be collected…a debt that is 'charged off' remains collectable."). Therefore, simply because Plaintiff strategically utilized accounting principles to "write off" or "charge-off" the damages of the First Payment does not nullify Defendant's breaches of the Originator Agreement and does not eliminate Defendant's obligation to indemnify Plaintiff for the damages it incurred based on same.

# POINT II

## DEFENDANT'S AFFIRMATIVE DEFENSES ARE WITHOUT MERIT AND CANNOT DEFEAT SUMMARY JUDGMENT

In the Moving Memo, Plaintiff explains one by one why each of Defendant's twenty (20) boilerplate and conclusory affirmative defenses are baseless and cannot defeat summary judgment. Moving Memo at pp. 8-22. In its Opposition, Defendant fails to refute Plaintiff's arguments and spends less than half a page to vaguely explain why its affirmative defenses should preclude the Court from granting Plaintiff's Motion. Opposition Memo at p. 17. In fact, Defendant fails to specifically mention any particular affirmative defense, aside from mentioning the First, Fifteenth and Sixteenth Affirmative Defenses. *Id*.

Defendant argues "[t]here is certainly a factual basis for [Defendant's] first affirmative defense [failure to state a claim], …to the question whether or not plaintiff has recoverable damages, having charged-off the loss in December 2020, re-funding the loan and presumably making a profit on the new instrument in their portfolio." *Id*. However, as set forth in the Moving Memo and as further explained herein at Point I(C), *supra*, Plaintiff established all of the elements necessary to set forth its *prima facie* entitlement to summary judgment on its breach of contract claim, including that it has been damaged by Defendant's actions, that its damages are not reduced and/or affected by its charging off the loan for tax purposes and that it is entitled to indemnification as a result of the language set forth in the Originator Agreement. *See* Section I(C) *supra*; Moving Memo at pp. 5-8. Defendant's vague assertion that its First Affirmative Defense should preclude summary judgment is baseless. *See* Opposition Memo at p. 17.

Moreover, Defendant merely restates its Fifteenth and Sixteenth Affirmative Defenses alleging that that Plaintiff's damages were caused by a third party or by Plaintiff's own actions and does not address any of Plaintiff's arguments set forth in its Moving Memo for why

11

Defendant's Fifteenth and Sixteenth Affirmative Defenses must be dismissed. *Id*. Defendant, by executing the Originator Agreement, was the only entity that agreed to the obligations set forth therein and owed to Plaintiff, including, but not limited to, ensuring that all documents submitted to Plaintiff by Defendant were "valid" and "authentic"; paying for and/or acquiring the Truck to ensure that Plaintiff was provided a first priority security interest; repurchasing the Devault Contract from Plaintiff after the Initial Default; and indemnifying Plaintiff for its acts. Wood Affidavit at ¶¶ 27, 29; Wood Affidavit, Ex. A at ¶¶ 5(A); 5(G); 9. Defendant is the only entity that provided incorrect wire instructions to Plaintiff and the only entity that took an active role in confirming same with Devault and/or Oshkosh. *Id.* at ¶ 20. The liability of Defendant's default under the Originator Agreement is Defendant's and Defendant's alone. Even if Plaintiff's damages may have been caused, in part, by other parties, that does not change the fact that the Originator Agreement allocated that risk to Defendant. Defendant's mere recitation of its Fifteenth and Sixteenth Affirmative Defenses is insufficient to defeat Plaintiff's Motion.

## POINT III

## DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT

As set forth in more detail below, Defendant has failed to meet its burden of establishing that it is entitled to judgment as a matter of law. Defendant's Cross Motion should be denied in its entirety.

**A.   CONTRARY TO DEFENDANT'S ASSERTIONS, THE "POST-MORTEM" EMAIL IS NOT A CONFESSION OF PLAINTIFF'S LIABILITY**

After Plaintiff became aware that the First Payment was not received by Oshkosh as a result of Defendant providing Plaintiff with fictious wire instructions, Plaintiff, as part of its own due diligence, conducted an internal review to attempt to determine what, if anything, could have been done in order avoid a similar scenario in the future (the "Post Mortem Email"). The Affidavit of

12

Chris Maudlin sworn to on September 28, 2023 (the "Maudlin Affidavit") at ¶¶ 3, 6. The purpose of the Post Mortem Email was not to explain the legal liabilities and obligations that Plaintiff was owed by Defendant under the Originator Agreement. *Id.* at ¶ 5. Instead, the Post Mortem Email was simply Plaintiff exercising good business practices to determine how problems can be avoided in the future. *Id.* at ¶ 6. The Post Mortem Email does not and cannot change the rights and remedies between Plaintiff and Defendant that were explicitly explained and agreed to in the Originator Agreement. Based on the foregoing, Defendant's arguments that the Post Mortem Email state that Plaintiff "was in the superior position to verify the wire instructions", "was at fault in creating an erroneous wire transfer" and constitute a confession as to Plaintiff's liability are simply wrong. *See* DeCandido Certification at ¶ 5; Opposition Memo at pp. 13-16.

To the contrary, the Post Mortem Email explicitly states that Plaintiff relied upon Defendant to confirm wire instructions with Oshkosh. Maudlin Affidavit, Ex. A. Mr. Maudlin further confirms that Defendant was in the best position to guard against the fraud. *See Id.* at ¶ 8. The Post Mortem Email cannot and should not be viewed as evidence to explain Plaintiff and Defendant's obligations. The only document that should be looked to in order to determine Plaintiff and Defendant's obligations to each other for purposes of this transaction is the Originator Agreement.

**B.  THERE IS NO INDEMNIFICATION PROVISION IN *JETCRETE* AND DEFENDANT WAS IN THE BEST POSITION TO PREVENT THE LOSS**

Defendant cites to *Jetcrete North America L.P. v. Austin Truck & Equipment Ltd.*, 484 F. Supp. 3d 915 (D. Nevada 2020), arguing that the facts are "closely aligned to the facts herein" and it is "instructive" for the Court. Opposition Memo at p. 13. However, in *Jetcrete*, buyer and vendor entered into a contract for the sale of three trucks and communicated directly with each other. *See* 484 F. Supp. 3d at 916-17. After vendor provided buyer with correct wire instructions and buyer

13

successfully wired an initial deposit to vendor, vendor's email server was hacked. *Id*. at 917. Thereafter, buyer received two emails – one from the hacker and one from vendor – whereby the hacker provided buyer with fictitious wire instructions and vendor provided buyer again with a copy of the correct wire instructions. *Id*. Ultimately, buyer sent the purchase price two times – one time to the fictitious vendor and one time to the real vendor. *Id*. at 917-918. The Court held that both parties performed their obligations under the sale contract (i.e. buyer paid for the trucks and vendor delivered the trucks) and neither party was in breach of the contract. *Id*. at 918, 921. Moreover, the Court held that buyer, who received two emails allegedly from vendor with conflicting wire instructions within minutes of each other "was in the best position to prevent the loss by taking the reasonable precaution of verifying the wiring instructions by phone" and therefore "[buyer] should suffer the loss." *Id*. at 919-921.

While the facts of *Jetcrete* appear to be similar to the facts herein, there are two major differences which prevents it from being supportive of Defendant's position. First, and most importantly, in *Jetcrete*, the vendor did not make certain representations and warranties to buyer and there was no indemnification provision whereby vendor agreed to indemnify buyer for any of its actions which caused buyer injury. As a result, *Jetcrete* does not support Defendant's contention that Plaintiff's Motion should be denied and its Cross Motion should be granted. To the contrary, it supports the position that Defendant was in the best position to confirm the wire instructions, which it did, albeit incorrectly.

Moreover, in *Jetcrete* the buyer was dealing directly with the vendor. In this case, the Defendant was dealing with Oshkosh (the vendor) and/or Devault (the buyer). Plaintiff had no contact with Oshkosh and/or Devault regarding the wire instructions. To the contrary, Plaintiff was dealing only with Defendant. In addition, in *Jetcrete*, the buyer received conflicting emails

14

purportedly from the vendor. In this case, Plaintiff received two (2) authentic emails from the Defendant, the first with the initial wire instructions and the second with the Defendant's confirmed (but ultimately proved to be fictitious) wire instructions. There is no dispute that Defendant's emails to Plaintiff were legitimate and they directed Plaintiff to change the wire instructions. Unlike in *Jetcrete*, where the buyer had two (2) conflicting wire instructions, (and therefore arguably should have taken additional steps to confirm which wire instructions were correct), Plaintiff had clear direction through an authentic email from Defendant as to where Defendant wanted Plaintiff to send the funds. Lastly, at no point in time did Defendant ever advise Plaintiff not to send the funds to the fictitious wire instructions. Unfortunately, the fraud was discovered many weeks later.

## POINT IV

## CONCLUSION AND PRAYER FOR RELIEF

As the foregoing illustrates, Plaintiff has established its *prima facie* entitlement to judgment as a matter of law. In its Opposition, Defendant has failed to establish that there is a genuine issue of material fact which precludes summary judgment in favor of Plaintiff. Moreover, Defendant has failed to meet its burden to establish that its Cross Motion should be granted. Thus, Plaintiff's Motion must be granted in its entirety and Defendant's Cross Motion must be denied in its entirety.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order granting its Motion for Summary Judgment on its First, Second and Third Claim; denying Defendant's Cross Motion and granting such other and further relief to which it justly may be entitled.

Dated: Garden City, New York
       September 28, 2023

                                                               */s/ Lauren Bernstein*
                                                         Lauren Bernstein, Esq.

3386267v3

## **WORD COUNT CERTIFICATION**

I hereby certify that the number of words in the foregoing document, according to the word count on the word processing program utilized, inclusive of point headings and footnotes, and exclusive of the caption, tables of contents and tables of authorities (if any), signature block and this certificate of compliance is **4,819**.

Dated: Garden City, New York
September 28, 2023

                                                        */s/ Lauren Bernstein*
                                                       Lauren Bernstein, Esq.