NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINTRUST SPECIALTY FINANCE, A DIVISION OF BEVERLY BANK & TRUST COMPANY, N.A., <br><br> Plaintiff, <br><br> v. <br><br> PINNACLE COMMERCIAL CREDIT, INC., <br><br> Defendant. | Civil Action No. 20-16589 (SRC) <br><br> **OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. The Court has reviewed the papers and proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiff's motion for summary judgment will be granted, subject to a later determination of damages, and Defendant's cross-motion for summary judgment will be denied.

### I. BACKGROUND

On March 1, 2021, Plaintiff filed its amended complaint, asserting claims for breach of contract, indemnification, and attorney's fees. On March 15, 2021, Defendant filed its answer to Plaintiff's amended complaint.

On or about April 7, 2020, the parties executed an "Originator Program Agreement" (the "Agreement"). See Affidavit of Chelsea Wood ("Wood Aff."), Ex. A. The Agreement refers to

Plaintiff as "the Bank," and to Defendant as "Originator." Id. at p. 1. The Agreement calls for Originator to submit "financing transactions"[1] to the Bank for its consideration. Id.

If the Bank elects to acquire a financing transaction, Originator must "keep the Bank informed of all information known to Originator concerning [proposed] financing transaction[s], including but not limited to the proposed lessee or debtor, the vendor/supplier of equipment, or the equipment or collateral, including any changes occurring or learned following submission of such proposed financing transaction to the Bank." Id. at ¶ 4. Additionally, the Agreement binds Originator to several warranties and representations. Id. at ¶ 5. In the event of a breach of any representation or warranty, the Agreement requires Originator to "purchase the identified financing transaction(s) from the Bank" (the "repurchase clause"). Id. at ¶ 12. Additionally, if Originator "fails to remit said funds within five (5) days, the Bank shall have the option to suspend the Bank's performance … without waiving any rights or remedies available hereunder." Id.

Furthermore, the Agreement contains an indemnification clause, requiring Originator to:

> [I]ndemnify and hold the Bank harmless for any and all expenses, injury and damage, including reasonable attorney's fees, which the Bank may hereafter incur, pay or suffer as a result of Originator's acts or any breach of Originator's obligations, representations and warranties set forth herein or in any assignment from Originator to the Bank or in connection with any financing transaction (including Originators dealings with any obligor, guarantor and/or vendor), submitted to the Bank and with respect to any equipment or collateral which is part of a financing transaction submitted to the Bank.

Id. at ¶ 9.

---

[1] "Financing transactions" include "leases, equipment finance agreements, promissory notes, loan agreements, conditional sale contracts, installment sales contracts, chattel paper, or other transactions." Wood Aff., Ex. A at p. 1.

On or about July 9, 2020, Defendant and Devault Group Inc. ("Devault") executed a Purchase Money Security Agreement (the "Devault Contract") whereby Defendant was to loan Devault $237,753 for a 2020 Oshkosh concrete mixing truck (the "Oshkosh Truck"). See Wood Aff., Ex. B. Defendant submitted this transaction to Plaintiff as a candidate for acquisition, Plaintiff accepted, and Defendant assigned its interest in the Oshkosh Truck to Plaintiff (the "Assignment"). See Wood Aff., Ex. C.

Although the Devault Contract required Defendant to pay Oshkosh $237,753, the parties arranged for Plaintiff to pay Oshkosh, and Defendant provided Plaintiff with "a funding package that included wire instructions" for doing so. Wood Aff. at ¶¶ 18-19. These instructions listed Bank of America as the recipient financial institution. See Affirmation of Lauren Bernstein, Esq. ("Bernstein Aff."), Ex. G. Subsequently, on or about July 16, 2020, Defendant emailed Plaintiff explaining that "Oshkosh needed to provide updated wire instructions because its bank would not accept payments over $200,000." Pl. SOF at ¶ 16 (citing Wood Aff., Ex. D; T42:2-22).[2] Plaintiff responded that it had not yet sent the payment and would wait for the updated wire instructions before proceeding. Id. at ¶ 17 (citing Wood Aff., Ex. D; T44:10-19).

Plaintiff asserts Oshkosh then emailed Defendant new wire instructions listing Regions Bank as the recipient financial institution, which Defendant forwarded to Plaintiff. Id. at ¶¶ 18-22 (citing Wood Aff. at ¶¶ 19-20; Bernstein Aff., Ex. E; T40:10-13, 44:23-45:15, 45:25-46:6). Plaintiff claims that after receiving the new wire instructions, it wired the payment to the Regions Bank account listed therein. Id. at ¶ 25 (citing Wood Aff. at ¶ 21; T51:13-21, 52:3-53:4). However, Oshkosh never received the payment. Id. at ¶ 25. Plaintiff asserts it "had no knowledge of Oshkosh's failure to receive the [payment] until approximately thirty-six days later when

---

[2] "T" as used herein refers to the excerpted deposition transcript of Paula Realmuto, attached as Exhibit J to the Bernstein Affirmation.

3

Defendant first advised Plaintiff … that Oshkosh did not receive the" $237,753. Wood Aff. at ¶ 23, Ex. E. By this time, "the fictious vendor [had withdrawn] the [$237,753] and closed its bank account." Id. at ¶ 24. Thereafter, Plaintiff invoked the Agreement's repurchase clause, claiming Defendant's conduct violated the representations and warranties contained in paragraphs 5(A), (G), and (M), but Defendant declined to repurchase the Devault Contract. Pl. SOF at ¶¶ 29-31 (citing Bernstein Aff., Exs. C-D; Wood Aff. at ¶ 25). Plaintiff submits that, "in order to mitigate [its] damages and avoid a potential lawsuit from Devault, it paid … Oshkosh [$237,753] a second time." Id. at ¶ 32 (citing Wood Aff. at ¶ 32).

Defendant counters that it sent Plaintiff instructions providing for payment via "ACH, wire transfer or check," and "Plaintiff chose to utilize the wire transfer method." Def. Response to Pl. SOF at ¶ 13; see also Certification of Paula Realmuto ("Realmuto Cert.") at ¶ 6. Defendant asserts that the second set of instructions contained "information for payment by check [that] was unchanged and still correct." Id. at ¶ 19. Defendant further submits that, after Plaintiff paid Oshkosh, Plaintiff received a perfected first priority security interest, "which continues to date." Id. at ¶ 26. Defendant's counterstatement of facts adds the following assertions: (1) Devault sent Defendant the July 9, 2020 wire instructions; (2) Plaintiff "conducted a 'post-mortem' which found [Plaintiff's] funding team responsible for the loss of funds;" (3) "Plaintiff funded the loan and retains that account to date and is profiting thereby;" and (4) "Plaintiff 'charged-off' the lost payment and it is unknown what amount has been set off against the first payment." See Def. Counter-SOF at ¶¶ 2-4.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(a) sets the standard the Court must apply to the parties' motions for summary judgment. Rule 56(a) provides that a "court shall grant summary judgment

4

if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). It is well-established that a factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The Court may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

5

### a. Plaintiff's Motion for Summary Judgment

At the outset, the Court notes the key facts not in dispute. First, Plaintiff asserts, and Defendant does not dispute, that the parties validly entered into, and are bound by, the Agreement. Second, the parties do not dispute that Defendant assigned its interest in the Oshkosh Truck to Plaintiff, and that such assignment was valid and is governed by the Agreement. Third, they do not dispute that, consistent with the Agreement's choice of law provision, the law of the State of California governs this Court's interpretation of the Agreement.

California law requires four elements to establish a breach of contract claim: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to [] plaintiff." Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011). "The fundamental goal of contract interpretation is 'to give effect to the mutual intention of the parties as it existed at the time of contracting.'" Hewlett-Packard Co. v. Oracle Corp., 280 Cal. Rptr. 3d 21, 43 (Cal. App. 6th Dist. 2021), reh'g denied (July 8, 2021), review denied (Sept. 29, 2021), cert. denied, 142 S. Ct. 2709 (2022) (quoting Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract," which are assigned their "clear and explicit" meaning within the "ordinary and popular sense," unless the parties have assigned them a special meaning. AIU Ins. Co. v. Super. Ct., 799 P.2d 1253, 1264 (Cal. 1990). "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." Id.

"Since indemnity agreements are construed under the same rules which govern the interpretation of other contracts, the indemnity agreement must be interpreted so as to give effect to the mutual intention of the parties." City of Bell v. Super. Ct., 163 Cal. Rptr. 3d 90, 98 (Cal. App. 2d Dist. 2013), as modified (Oct. 9, 2013), as modified on denial of reh'g (Oct. 25, 2013).

"In a noninsurance indemnity agreement, [] it is the indemnitee who may often have the superior bargaining power, and this gives rise to public policy concerns which influence how such agreements are construed." Id. at 99. "As such, if a party seeks, in a noninsurance agreement, to be indemnified for protections beyond those afforded by the doctrines of implied or equitable indemnity[3]—for his or her own active negligence, or regardless of the indemnitor's fault—the language on the point must be particularly clear and explicit and will be construed strictly against the indemnitee." Id. at 100-01. In other words, there must be "language in the terms of the contract indicating an intent for the indemnification clause to go 'beyond the usual context of third party indemnification.'" Id. at 101 (quoting Queen Villas Homeowners Assn. v. TCB Prop. Mgt., 56 Cal. Rptr. 3d 528, 532 (Cal. App. 4th Dist. 2007)).

Plaintiff argues that Defendant's "actions in providing Plaintiff with fictious wire instructions, failing to pay for the [Oshkosh Truck] and failing to provide Plaintiff with a first priority security interest in the Truck constitute a breach of Defendant's representations and warranties as set forth in [paragraphs 5(A), (G), and (M) of the] Agreement," the repurchase clause, and the indemnification clause. See Wood Aff. at ¶¶ 26-33; Pl. Br. at 5-7. Thus, Plaintiff seeks judgment against Defendant in the amount of $237,753, "plus interest from July 16, 2020, and attorney's fees that Plaintiff was forced to incur due to Defendant's actions." See Wood Aff. at ¶ 41. Furthermore, Plaintiff argues that Defendant's affirmative defenses "lack merit," and that "Defendant has failed to raise a triable issue of material fact" as to any of its affirmative defenses. Pl. Br. at 9-22.

---

[3] Equitable or implied indemnity "may find its source in equitable considerations brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case." E. L. White, Inc. v. City of Huntington Beach, 579 P.2d 505, 506 (Cal. 1978).

7

### b. Defendant's Cross-Motion for Summary Judgment

Defendant cross-moves for summary judgment based largely on Jetcrete N.A. LP v. Austin Truck & Equip., Ltd., 484 F. Supp. 3d 915 (D. Nev. 2020). In Jetcrete, hackers compromised defendant's email and sent plaintiff fraudulent wire instructions—changing the previous, correct payment instructions—which caused plaintiff to wire the purchase funds to the hackers. See 484 F. Supp. 3d at 917-18. The District Court denied plaintiff's claims and entered judgment for defendant, finding that plaintiff "was in the best position to prevent the loss by taking the reasonable precaution of verifying the [changed] wiring instructions by phone." Id. at 920. Specifically, the Court found that plaintiff failed to follow set internal procedures for verifying wire instructions, and that plaintiff's failure to confirm the wire instructions was "especially disconcerting after [it] received conflicting email instructions within minutes of each other." Id.

Defendant's owner and president contends Plaintiff "was in the superior position to verify the wire transfer instructions and, as the funding entity, that responsibility was theirs." See Certification of Edward DeCandido ("DeCandido Cert.") at ¶ 5. Defendant certifies it is typically the purchasing bank, rather than Defendant, that "initiates a wire transfer of funds" and verifies payment instructions. See id. at ¶ 4; see also Realmuto Cert. at ¶¶ 3, 6 ("[I]t was not my responsibility or obligation … to determine if the payment instructions were fraudulent.").

Defendant's employee, Paula Realmuto ("Realmuto"), certifies that after notifying Plaintiff's employee Chelsea Wood ("Wood") that Oshkosh had changed the payment instructions, Wood informed Realmuto that Plaintiff would "hold off" on sending the wire transfer until Defendant verified the new wire instructions with Oshkosh. See Realmuto Cert. at ¶ 4. Realmuto contends that, "[p]rior to [] receiving a response from Oshkosh and without further input," Plaintiff sent the wire transfer. Id.; see also DeCandido Cert. at ¶ 6 ("[I]n the span of 23 minutes [] Wood

8

initiated the wire transfer having no further word from [Realmuto] to verify the information nor having given [Realmuto] an adequate opportunity to do so.").

As for its affirmative defenses, Defendant argues only that its first affirmative defense (failure to state a claim), fifteenth affirmative defense (damages caused by third parties over which Defendant had no control), and sixteenth affirmative defense (Plaintiff's damages caused by Plaintiff's own actions) should survive Plaintiff's motion for summary judgment.

    c. **Legal Analysis**

Neither Jetcrete, California state law, nor the Agreement support Defendant's motion for summary judgment.

Jetcrete is distinguishable from this matter. In Jetcrete, the parties' contract seemingly contained no indemnification clause, as the Court's opinion makes no mention of the issue. See 484 F. Supp. 3d at 920. Moreover, in Jetcrete, the plaintiff corresponded directly with the hacker, whereas here Plaintiff and the hacker had no direct interaction or communication. See id. Regardless of these factual distinctions, Jetcrete applied Nevada state law to the parties' contract; here, California state law governs. See id. at 918. As such, Jetcrete does not support Defendant's cross-motion for summary judgment.

As noted above, the parties do not dispute that the Agreement is a valid, binding contract, containing an indemnification clause. Furthermore, the parties do not dispute that Plaintiff wired $237,753 intended for Oshkosh to the incorrect bank account—which was never recovered—and that Defendant never indemnified Plaintiff for its loss. Defendant does not dispute that Plaintiff performed in accordance with its obligations under the Agreement, including the extracontractual arrangement of Plaintiff sending Oshkosh the purchase funds.

The key feature of the Agreement is the indemnification clause, which requires Defendant to indemnify Plaintiff "for any and all expenses, injury and damage, including reasonable attorney's fees, which [Plaintiff] may [] incur, pay or suffer **as a result of [Defendant's] acts**." See Wood Aff., Ex. A at ¶ 9 (emphasis added). Because this plain, unambiguous language calls for Defendant to indemnify Plaintiff regardless of fault, negligence, or circumstances beyond Defendant's control, the clause goes beyond the "usual context of third party indemnification" and implied or equitable indemnity. See City of Bell, 163 Cal. Rptr. 3d at 100-01. Therefore, "the language on the point must be particularly clear and explicit and will be construed strictly against the indemnitee." Id. Here, the Court finds the plain, ordinary meaning of this clause sufficiently clear and explicit: Defendant must indemnify Plaintiff for any injury Plaintiff suffers due, in whole or in part, to Defendant's act or acts. See AIU Ins. Co., 799 P.2d at 1264. Therefore, Plaintiff is entitled to indemnity in this situation, provided Plaintiff can prove it sent the wire payment to the incorrect bank account because of Defendant's actions. See id.; Wood Aff., Ex. A at ¶ 9.

The undisputed material facts establish the following sequence of events. Defendant provided Plaintiff with a "funding package" that included wire payment instructions. Wood Aff. at ¶¶ 18-19. Later, Realmuto emailed Wood the following: "I just heard from the vendor[4] that they need to send me new wire instructions because the[] dollar amount is over $200,000.00. Has the wire already been sent out to the vendor?" Wood Aff., Ex. D. Realmuto then emailed Wood the second set of payment instructions listing the Regions Bank account as the recipient for wire transfers. Id.; T44:23-45:15. Plaintiff had not yet sent the wire transfer. T45:25-46:5. These facts establish it was Defendant's act of sending Plaintiff the incorrect wire payment instructions that caused Plaintiff's loss. Indeed, Defendant's argument that Plaintiff sent the wire transfer prior to

---

[4] Realmuto clarified at her deposition that it was a Devault representative who informed her that Oshkosh had changed the payment instructions. T32:22-24.

Defendant confirming the new payment instructions is irrelevant, because the motion record indisputably establishes that Realmuto emailed Wood and several other employees of Plaintiff the hacker's wire instructions, causing Plaintiff to send $237,753 intended for Oshkosh to the wrong bank account. Plaintiff, having shown it is entitled to indemnification,[5] has demonstrated that Defendant is liable for breach of contract. See Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011).

However, although Plaintiff has proven it suffered damages, the Court cannot enter final judgment at this juncture. "For the breach of an obligation arising from contract, the measure of damages … is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. "[A] plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited." Renda v. Nevarez, 167 Cal. Rptr. 3d 874, 878 (Cal. App. 4th Dist. 2014). Here, there is no dispute that Plaintiff perfected its security interest in the Oshkosh Truck, and Plaintiff has not contested Defendant's assertion that Plaintiff "retains [the Devault Contract] to date and continues to profit thereby." See Def. Counter-SOF at ¶ 4. Any profits Plaintiff has or will generate from the Devault Contract must be subtracted from the lost $237,753, as Plaintiff cannot be indemnified in excess of its net loss.[6] See Cal. Civ. Code §§ 3300, 3302; Wood Aff., Ex A at ¶ 9.

---

[5] Defendant has argued three of its affirmative defenses preclude summary judgment for Plaintiff. However, because the Agreement's indemnification clause entitles Plaintiff to indemnification under these facts, Defendant's first, fifteenth, and sixteenth affirmative defenses all fail as a matter of law.

[6] The Agreement further provides that "[s]hould it become necessary for either party to enforce this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and costs." Wood Aff., Ex. A at ¶ 18. As the prevailing party, Plaintiff is entitled to an award of reasonable attorney's fees and costs, to be determined in conjunction with submission of Plaintiff's damages proofs. See Cal. Civ. Code § 1717.

Therefore, Plaintiff has demonstrated there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Plaintiff is granted summary judgment on its breach of contract claim, subject to submission of proofs establishing damages. Consequently, Defendant's cross-motion for summary judgment is denied.

### III.   CONCLUSION

For the reasons discussed, Plaintiff has demonstrated the absence of a genuine dispute as to any material fact and is entitled to judgment as a matter of law on its breach of contract claim. Defendant's cross-motion for summary judgment is denied. Nonetheless, as outlined above, the Court shall not enter final judgment until Plaintiff provides supplemental proofs establishing its damages.

Therefore, **IT IS** on this 31st day of October, 2023,

**ORDERED**, as follows:

1. Plaintiff's motion for summary judgment is granted, however, the Court shall not enter final judgment until Plaintiff provides proofs establishing its damages;
2. Defendant's cross-motion for summary judgment is denied;
3. Plaintiff must provide the Court with supplemental damages proofs by November 9, 2023;
4. Defendant shall provide a response, if any, to Plaintiff's submission by November 20, 2023;
5. Plaintiff shall file its reply, if any, by November 27, 2023; and
6. The issue shall be returnable before the Court on December 4, 2023.

   /s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge