NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| WINTRUST SPECIALTY FINANCE, A DIVISION OF BEVERLY BANK & TRUST COMPANY, N.A., | : : : : : : | Civil Action No. 20-16589 (SRC)  **OPINION** |
| Plaintiff, | : : | |
| v. | : : : | |
| PINNACLE COMMERCIAL CREDIT, INC., | : : : | |
| Defendant. | : | |

**CHESLER**, District Judge

This matter comes before the Court on Plaintiff's supplemental damages proofs and application for an award of reasonable attorney's fees and costs. The Court has reviewed the papers and proceeds to rule on the application without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court shall enter final judgment in the amount of $454,323.47 for Plaintiff.

   I.   **BACKGROUND**

The Court incorporates by reference its October 31, 2023 Opinion and declines to repeat the facts set forth therein.

As is relevant here, in its prior opinion, the Court held that Plaintiff demonstrated the absence of any genuine issue of material fact and granted Plaintiff summary judgment on its breach of contract claim. Consequently, the Court denied Defendant's cross-motion for summary judgment. However, the Court declined to enter final judgment for Plaintiff at that time, reasoning

1

that any profits Plaintiff had or would generate from its Purchase Money Security Agreement with Devault Group Inc. ("Devault") should be subtracted from the lost payment of $237,753 to determine Plaintiff's damages. The Court ordered Plaintiff to submit supplemental damages proofs and set a briefing schedule. The Court further held that Plaintiff was entitled to an award of reasonable attorney's fees and costs, to be determined in conjunction with Plaintiff's damages.

The Court set a deadline of November 20, 2023 for Defendant's response to Plaintiff's submission of its supplemental proofs. It is now December 14, 2023, and Defendant has not responded to Plaintiff's filing or requested an extension of time for doing so.

## II. DISCUSSION

### A. Damages

The Court required Plaintiff to provide supplemental damages proofs based on its reading of California law. See Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages … is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."); Renda v. Nevarez, 167 Cal. Rptr. 3d 874, 878 (Cal. App. 4th Dist. 2014) ("[A] plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited."). The Court noted there was no dispute that Plaintiff perfected its security interest in the truck, and Plaintiff had not contested Defendant's assertion that Plaintiff "retains [its contract with Devault] to date and continues to profit thereby." See Def. Counter-SOF at ¶ 4.

Plaintiff responds that, "utilizing the fictitious wire instructions which were provided to Plaintiff by Defendant, on or about July 16, 2020, Plaintiff paid $237,753.00 to a fictitious entity posing as Oshkosh (the 'First Payment')," and subsequently, after learning that Oshkosh never

received the First Payment, "made another payment of $237,753.00 which was received by the bona fide Oshkosh (the 'Second Payment')." Affidavit of Chelsea Wood ("Wood Aff.") at ¶¶ 5-6. Thus, Plaintiff asserts that, "in all, Plaintiff made two payments of $237,753.00 for a total of $475,506.00, when only one should have been required." Id. at ¶ 6. Plaintiff contends it "is not receiving any payments from Devault to repay the First Payment because the First Payment was sent to a fictitious entity," and, therefore, "the First Payment in the amount of $237,753.00 represents the first portion of Plaintiff's damages." Id. at ¶ 9.

Here, the Court agrees that Plaintiff may recover the entire First Payment, as the First Payment is distinct and separate from the Second Payment, and Plaintiff has certified it has received no payments from Devault toward the First Payment. See Cal. Civ. Code § 3300; Renda, 167 Cal. Rptr. 3d at 878. As the Court has previously found Defendant's actions caused the loss of the First Payment, Plaintiff is entitled to recover the First Payment of $237,753.00.

Furthermore, Plaintiff argues it is "entitled to interest on the First Payment at an interest rate of 6.10% per annum," as the loss of the First Payment prevented Plaintiff from using those funds "to finance other transactions from which Plaintiff would have received interest at approximately 6.10% per annum."[1] Wood Aff. at ¶¶ 10, 13.

As an award of prejudgment interest is a procedural question of law and there is no federal law or rule governing the issue, although California law governs the parties' Agreement, the law of the forum state in which this Court sits—New Jersey—applies here. See Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982); see also N. Bergen Rex Transport, Inc. v. Trailer Leasing Co., a Div. of Keller Sys., Inc., 730 A.2d 843, 848 (N.J. 1999).

---

[1] According to Plaintiff, "[o]ver the past five (5) years, Plaintiff's weighted average yield when it lends money to finance the purchase of commercial equipment is approximately 6.10% per annum." Wood Aff. at ¶ 12.

3

Under New Jersey law, "the award of prejudgment interest on contract and equitable claims is based on equitable principles" and within the trial court's discretion. Cnty. of Essex v. First Union Nat. Bank, 891 A.2d 600, 608 (N.J. 2006). "[P]rejudgment interest has been regarded by [New Jersey] courts as compensatory—to indemnify the plaintiff for the loss of what the monies due him would presumably have earned if payment had not been refused." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 323 A.2d 495, 506 (N.J. 1974). Typically, the underlying reasoning behind awarding prejudgment interest in breach of contract cases is "that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." See id.; Cnty. of Essex, 891 A.2d at 609. Another consideration might be, for example, whether the judgment—absent prejudgment interest—exceeds the claimant's actual losses. See Madison Fin., LLC v. Hunts Point Co-op. Mkt., Inc., No. CIV. 01-3830WHW, 2008 WL 724362, at *16 (D.N.J. Mar. 17, 2008), aff'd as modified, 421 Fed. Appx. 153 (3d Cir. 2009) (unpublished).

Equity and the plain language of the indemnification clause support an award of prejudgment interest to Plaintiff. Defendant breached the indemnification clause by sending Plaintiff incorrect wire payment instructions—causing the loss of the First Payment—and refusing to compensate Plaintiff for its loss. The indemnification clause requires Defendant to indemnify Plaintiff for "any and all" losses, and Plaintiff certifies that, if not for the erroneous First Payment, it would have used those funds "to finance other transactions from which Plaintiff would have received interest at approximately 6.10% per annum." Wood Aff. at ¶ 13. Defendant has not contested the accuracy of Plaintiff's interest rate calculation, and Plaintiff's submission gives the Court no reason to doubt that figure. Because Defendant presumably benefitted from the

assignment of the Devault Contract to Plaintiff, and because the loss of the First Payment and Defendant's breach of the indemnification clause deprived Plaintiff of the ability to use those funds as it normally would in the ordinary course of business—to generate profits on financing transactions through interest payments—equitable principles support an award of prejudgment interest to Plaintiff.

Therefore, the Court shall calculate prejudgment interest at a rate of 6.10% per annum from July 16, 2020, the date that Plaintiff sent the First Payment, to December 14, 2023, the date of the Court's entry of final judgment. The result is an award of prejudgment interest in the amount of $49,503.58.

### B. Attorney's Fees and Costs

As this matter is before the Court based on diversity jurisdiction, state law governs the issue of attorney's fees and costs. Montgomery Ward & Co. v. Pac. Indem. Co., 557 F.2d 51, 56 (3d Cir. 1977). There is no dispute that, consistent with the contract's choice of law provision, California law governs this Court's interpretation of same. Therefore, California law governs Plaintiff's application for attorney's fees and costs.

The pertinent provision of California law states:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
>
> Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

5

> Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Cal. Civ. Code § 1717(a). "If the contractual provision limits an award of attorney fees to the party who has prevailed on the contract, fees may be awarded only to that party, and section 1717 is invoked." Maynard v. BTI Grp., Inc., 157 Cal. Rptr. 3d 148, 151 (Ct. App. 2013).

"[T]he trial court has broad authority to determine the amount of a reasonable fee." PLCM Grp. v. Drexler, 997 P.2d 511, 518 (Cal. 2000), as modified (June 2, 2000). California courts utilize the lodestar approach to determine a reasonable fee award. Id. at 518-19. The trial court has the discretion to determine a reasonable billing rate multiplied by a reasonable number of hours worked, considering "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." Id. at 519 (quoting Melnyk v. Robledo, 134 Cal. Rptr. 602, 623-24 (Cal. App. 2d Dist. 1976)).

First, the hours spent on this matter are reasonable. Plaintiff asserts it should be compensated for 401.35 hours of attorney work and 20.15 hours of paralegal and law clerk work, amounting to $164,063.50. See Affirmation of Lauren Bernstein ("Bernstein Aff.") at ¶ 26. Plaintiff provides a breakdown of counsel's work on each phase of litigation and detailed invoices explaining each item of billing, as well as the billing rates for partners, associates and other attorneys, law clerks, and paralegals. Id. at ¶¶ 13-15, Ex. A. Defendant has not contested any of the claimed hourly rates of Plaintiff's attorneys or the number of hours billed. The Court has reviewed these submissions and concludes, based upon its knowledge of billing rates for commercial litigation work in federal courts in this area, and the fact that this matter proceeded all

the way to summary judgment, where Plaintiff prevailed, that all individual expenditures of time and the total number of hours worked are reasonable.

Finally, the Court will approve Plaintiff's claimed costs. The only inquiry here is whether the claimed costs are reasonable. They are. Plaintiff claims $3,003.39. Plaintiff provides a detailed breakdown of these costs. Id., Ex. A. The Court has reviewed these costs and concludes they are reasonable in this case, which proceeded as far as summary judgment. Therefore, the Court will award Plaintiff $3,003.39 in costs.

Therefore, Plaintiff is entitled to reasonable attorney's fees and costs of $167,066.89.

### III. CONCLUSION

For the reasons discussed, Plaintiff is entitled to recover the amount of the lost First Payment of $237,753.00, plus prejudgment interest of $49,503.58, for a total award of $287,256.58. Furthermore, Plaintiff is entitled to reasonable attorney's fees and costs totaling $167,066.89. Final judgment shall be entered for Plaintiff in the total amount of $454,323.47.

/s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: December 14, 2023